IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2002

## STATE OF TENNESSEE v. TOMMY HENRY

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S44, 275    R. Jerry Beck, Judge**

---

**No. E2002-00166-CCA-R3-CD**
**October 7, 2002**

---

The Sullivan County Grand Jury charged the Defendant with one count of possession of a Schedule II controlled substance with intent to sell or deliver and with two counts of possession of drug paraphernalia. The Defendant subsequently entered an <u>Alford</u> plea to one count of possession of a Schedule II controlled substance and to one count of possession of drug paraphernalia. Pursuant to the plea agreement, the trial court sentenced the Defendant to eleven months and twenty-nine days for each offense and ordered that the sentences run consecutively. After a sentencing hearing, the trial court ordered that the Defendant serve his sentence for possession of a Schedule II controlled substance in the county jail followed by service of his sentence for possession of drug paraphernalia on supervised probation. The Defendant appeals the denial of alternative sentencing with regard to his sentence for possession of a Schedule II controlled substance. Finding no error in the record before us, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Joseph F. Harrison, Assistant Public Defender, Blountville, Tennessee, for the appellant, Tommy Lee Henry.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural and Factual Background

On October 10, 2000, the Sullivan County Grand Jury charged the Defendant, Tommy Henry, in a three-count presentment with one count of possession of a Schedule II controlled substance,

specifically cocaine, with intent to sell or deliver, a Class C felony; and with two counts of possession of drug paraphernalia. On October 15, 2001, the Defendant entered an Alford plea, see generally North Carolina v. Alford, 400 U.S. 25 (1970), to the lesser-included offense of possession of a Schedule II controlled substance and to one count of possession of drug paraphernalia, both Class A misdemeanors. Pursuant to the plea agreement, the trial court sentenced the Defendant to eleven months and twenty-nine days for his conviction for possession of cocaine and ordered the Defendant to pay a fine in the amount of $250.00. For the conviction for possession of drug paraphernalia, the trial court sentenced the Defendant to eleven months and twenty-nine days and ordered him to pay a fine in the amount of $150.00. Pursuant to the agreement, the trial court ordered that the Defendant serve the sentences consecutively, resulting in an effective sentence of one year, eleven-months, and twenty-eight days.

On January 14, 2002, the trial court conducted a sentencing hearing, solely to determine the manner of service of the sentences. At the conclusion of the hearing, the trial court denied probation for the Defendant's conviction for possession of cocaine, ordering the Defendant to serve the sentence in jail with a seventy-five percent release eligibility date. However, the court ordered the Defendant to serve his sentence for possession of drug paraphernalia on supervised probation. In this appeal as of right, the Defendant argues that the trial court erred by denying alternative sentencing. After a review of the record, we affirm the judgment of the trial court.

At the plea hearing, the State summarized the facts underlying the charges in this case as follows:

> [T]his is a case in which [a police officer] was dispatched to the [D]efendant's residence. The call had come in from [the Defendant's] ex-wife. [The officer] went there for purposes of investigating a call of a domestic disturbance.
> . . . When [the officer] walked into the residence of the [D]efendant, she immediately noticed, in plain view, a number of pieces of drug paraphernalia, which include[d] a mirror which had a white powdery residue, some aluminum cans with burned residue which would be consistent with smoking Cocaine, and plastic baggies with the corners cut out. She also noticed on the coffee table, in plain view, a saucer with a . . . powdery residue. Underneath the coffee table were two baggie corners with a white powdery residue. The substances later tested positive for Cocaine, a Schedule II controlled substance.
> [The officer] spoke briefly to [the Defendant] while he was downstairs. [The Defendant] then ran upstairs which caused her concern. And when she followed him in to one of the bedrooms, she noticed that [the Defendant] was in possession of a large amount of money, as well as additional baggies with the corners cut[] out. [The Defendant] was later placed under arrest.
> . . . [A] number of items of paraphernalia were sent to the Tennessee Bureau of Investigation Crime Laboratory for purposes of processing the items to see if latent fingerprints were present. A latent fingerprint was developed off of one of the saucers which contained some of the Cocaine residue and that latent was positively identified . . . as being the fingerprint of . . . the [D]efendant.

This occurred within the city limits of Kingsport and county boundaries of Sullivan County, Tennessee.

The Defendant, while not agreeing that all of the above facts were true, stipulated to these facts for purposes of the plea hearing.

At the alternative sentencing hearing, only the Defendant testified. He stated that he was forty-five years old and that he was living with his mother at the time of the hearing. He also testified that he was separated from his wife, Jacqueline Henry, with whom he had six children. He reported that all of his children were over the age of eighteen.

The Defendant testified that he had attended Dobyns-Bennett High School, where he played football and basketball and ran track. He stated that after graduating from high school, he received a partial basketball scholarship to Gardner Webb University, which he attended until his scholarship was depleted. He then received a full basketball scholarship to Roane State Community College, which he attended until his scholarship was depleted. He reported that he attended a total of approximately two and one-half years of college.

The Defendant testified that after college, he worked on a fairly steady basis. He reported that at the time of the hearing, he was detailing cars for Lucas Motors. He also stated that he had recently obtained employment as an electrician's helper at Davis Electric in Kingsport. He stated that he planned to work full time for Davis Electric at an hourly rate of $15.80.

The Defendant testified that he had not been convicted of any crimes for approximately the fifteen years prior to the hearing. However, he admitted that between the ages of twenty-eight and thirty, he wrote a number of bad checks. The Defendant maintained that at the time of the hearing, he had paid all of the checks in full. He stated that he initially paid off some of the checks, that some of the charges for writing bad checks had been dismissed, and that he had received some convictions for the crimes. The Defendant explained that he received the bad check charges after he was "laid off from work." He testified that at the time, he was married and living in a new house, and he did not have money to buy necessities for his family. He claimed that he wrote each of the checks to buy groceries and stated that most of the bad checks were written for an amount of approximately $30 to $40.

The Defendant further testified that he did not use drugs and that he drank only occasionally. He also maintained that it had been two or three months since he had drunk any alcoholic beverages. The Defendant admitted that after being charged with the crimes in this case, he was subsequently charged with selling less than one-half of a gram of cocaine. However, he stated that he had entered a plea of not guilty to the charge, and he maintained that he was innocent of the charge. Finally, he testified that if he were to be granted alternative sentencing, he could abide by any and all conditions imposed by the court.

On cross-examination, the Defendant admitted that he had also been convicted of assault with a deadly weapon and of driving with a suspended license. He further admitted that at the time of his arrest for the charges in this case, he had $1,350.00 in his possession. However, he claimed that he had saved the money to buy a car. In addition, the Defendant explained that his fingerprint which was found on a mirror along with other drug paraphernalia at the time of his arrest was likely on the mirror because he used the mirror when he shaved and cut his hair. Finally, he admitted that on August 30, 2001, while this case was pending, he was charged with selling less than .5 grams of cocaine, possession of less than .5 grams of cocaine, and possession of marijuana. All of these charges were pending at the time of the hearing in this case. The State, with the agreement of the Defendant, entered into evidence the contents of an affidavit of complaint concerning the Defendant's pending charges.

## II. Analysis

The Defendant now contends that he was improperly sentenced. The sole issue is the manner of service of the possession of cocaine sentence. In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the trial court is required to allow the parties a reasonable opportunity to be heard on the question of the manner in which it is to be served. Tenn. Code Ann. § 40-35-302(a). In this case, the trial court did so. Further, the sentence imposed must be specific and consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. Id. § 40-35-302(b). A percentage of not greater than seventy-five percent of the sentence should be fixed for service, after which the Defendant becomes eligible for "work release, furlough, trusty status and related rehabilitative programs." Id. § 40-35-302(d).

The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, in determining the percentage of the sentence to be served in actual confinement, the court must consider enhancement and mitigating factors as well as the purposes and principles of the Criminal Sentencing Reform Act of 1989, and the court should not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d).

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Id. § 40-35-401(d). The Tennessee Supreme Court has held that in misdemeanor sentencing a trial court is not required to place specific findings on the record. State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). A trial court need only consider the principles of sentencing and the enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute. Id. In this case, to determine the manner of service of the sentences, the trial court considered appropriate enhancement and mitigating factors and the principles of sentencing. Therefore, our review in this case is de novo with a presumption of correctness.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The Defendant argues that he should have been granted some form of probation. In determining whether to grant or deny probation, the trial court may consider the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The Defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169.

At the conclusion of the sentencing hearing, the trial court found that the Defendant "for about the last ten or fifteen (15) years, has done pretty good as far as developing any new charges." However, the trial judge noted that the Defendant's presentence report contained five pages listing prior convictions. He noted that most of the convictions were for writing bad checks but stated that the report also contained convictions for at least one prior assault and other "[a]ssault and [b]atteries."

The trial court also stated,

> The [D]efendant, on the positive side, did go a considerable amount of time without any great difficulty. He had some college. He's a high school graduate. Evidently was an excellent athlete . . . . [H]e denies current drug usage and . . . drinks socially. A mixed bag.
>
> I'm not going to try to resolve his guilt or innocence because that's beyond a reasonable doubt standard. There are strong indications from the Affidavit that . . . cocaine and marijuana was [sic] found in the car he was driving. Strong circumstantial evidence that he was dealing in drugs . . . . [T]hat's a negative factor, but I'm hesitant to say a man's guilty before he's had a jury trial in a case . . . . But even without that . . . his prior record . . . is substantial, although petty in most respects, small checks[,] . . . . [p]rior assaults.

The court further noted that there was "some indication [that the Defendant] has drug problems."

Based upon these findings, the trial court denied alternative sentencing with regard to the Defendant's conviction for possession of cocaine. However, the trial court granted probation as to the Defendant's conviction for possession of drug paraphernalia. We conclude that the court's denial of alternative sentencing with regard to the Defendant's conviction for possession of cocaine is adequately supported by the record. As noted by the trial court, the Defendant's presentence report indicates a lengthy criminal history. The record includes convictions for several traffic offenses, a conviction for driving with a suspended license, numerous convictions for writing bad or worthless

checks, a conviction for assault with a deadly weapon, two convictions for assault and battery, and a conviction for damage to private property. Although most of these crimes are, as the trial court stated, "petty" in nature, the foregoing is clearly a lengthy criminal record. We agree with the trial court's determination that a jail sentence was appropriate for the possession of cocaine conviction.

Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE